IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Teresa J. Leap, | ) | Civil Action No. 8:10-cv-02995-MBS-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local
Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1]
Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final
decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's
claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is
recommended that the decision of the Commissioner be reversed and the case be
remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further
administrative action consistent with this recommendation.

**PROCEDURAL HISTORY**

On April 29, 2008, Plaintiff protectively filed a Title II application for DIB, alleging an
onset of disability date of April 1, 2002.[2]  [R. 83–86.]  The claim was denied initially on July

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent
to disposition by a magistrate judge.

[2]Plaintiff subsequently amended her onset date of disability to April 1, 2008.  [R. 8, 101.]

11, 2008 [R. 31–32] and was denied on reconsideration by the Social Security Administration ("the Administration") on May 8, 2009. [R. 33–34]. On May 13, 2009, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 43–44], and on February 11, 2010, ALJ Edward T. Morriss conducted a de novo hearing on Plaintiff's claims [R. 20–30].

The ALJ issued a decision on March 24, 2010, finding Plaintiff not disabled under §§ 216(i) and 223(d) of the Social Security Act. [R. 8–15.] The ALJ found Plaintiff had a severe impairment of status/post surgeries of the lumbar spine [R. 10, Finding 3], and she had a history of anxiety which was not severe. [R. 11, Finding 3]. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listing 1.04, disorders of the spine. [*Id.*, Finding 4.] The ALJ found Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). [*Id.*, Finding 5.] Specifically, the ALJ found Plaintiff was able to lift and carry up to twenty pounds occasionally and ten pounds frequently; and stand, walk and sit for six hours each in an eight-hour day. [*Id.*] The ALJ also found Plaintiff could frequently climb ramps and stairs and frequently balance; and Plaintiff could only occasionally climb ladders, ropes, and scaffolds and occasionally stoop, kneel, crouch, and crawl. [R. 11–12, Finding 5.] Additionally, the ALJ found Plaintiff's pain limited her to simple routine repetitive tasks. [R. 12, Finding 5.] The ALJ also found Plaintiff was unable to perform any past relevant work [R. 14, Finding 6], but there were jobs that existed in significant numbers in the national economy Plaintiff could perform [*Id.*, Finding 10].

Plaintiff requested Appeals Council review of the ALJ's decision [R. 4], but on October 26, 2010, the Council declined review [R. 1–4]. Plaintiff filed this action for judicial review on November 18, 2010. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred by:

1.   rejecting the opinion of the Plaintiff's treating neurosurgeon, Stephen E. Rawe, M.D. [Doc. 13 at 6–13];

2.   failing to properly evaluate Plaintiff's allegations of pain [*id.* at 13–15]; and

3   failing  to obtain expert vocational testimony [*id.* at 15–16].

The Commissioner contends:

1.   the ALJ's residual functional capacity determination is supported by substantial evidence [Doc. 14 at 8–16];

2.   the ALJ referred to the medical-vocational guidelines and reasonably concluded Plaintiff's limitations had no impact on the occupational base of unskilled work at the light exertional level [*id.* at 16–18].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear

disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor

the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions.

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

**A.     *Substantial Gainful Activity***

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is

generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

## B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

## C. *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]    20

---

[4]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(e)

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir.

11

1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III. Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for

the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if

> available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Treating Physician Opinion

Plaintiff argues the ALJ committed reversible error by rejecting the opinion of Plaintiff's treating neurosurgeon Dr. Rawe and by giving great weight to the opinions of the non-examining state agency medical consultants. [Doc. 13 at 8.] Plaintiff argues Dr. Rawe's medical opinion about the nature and severity of Plaintiff's medical impairments and physical limitations was entitled to either controlling weight or greater weight under the treating physician rule. [*Id.*]

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527) ("the *Johnson* factors"). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Finally, the ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment

or impairments meets or equals a listing, or the claimant has a certain residual functional capacity. 20 C.F.R. § 1527(e).[6]

### Dr. Rawe's Opinion

Dr. Rawe performed three lumbar spine surgeries on Plaintiff—the initial surgery in 2003 was a laminectomy/discectomy; the second surgery, performed six weeks after the first, involved placement of screws and rods; and the third surgery in 2004 involved the removal of the hardware. [R. 196–97.] Dr. Rawe evaluated Plaintiff again in 2006 for chronic neck and shoulder pain and ordered an MRI of the cervical spine, which showed degenerative disease at several levels but no spinal stenosis. [R. 203–05.] In April 2008, Plaintiff returned to Dr. Rawe with complaints of increasing back and hip pain. [R. 206.] Dr. Rawe reviewed a current MRI of the lumbar spine, which showed no obvious instability and that the spinal fusion site at L5-S1 was solidly in place. [R. 207.] Dr. Rawe noted Plaintiff was receiving pain management treatment from Dr. Netherton, who was considering injections and a rhizotomy procedure, and that there were no further issues involving the spinal discs that would require operative intervention. [R. 347.] Dr. Rawe found no evidence of myelopathy or sensory abnormalities. [R. 206.] Dr. Rawe recommended Plaintiff resume Darvocet and, if unhelpful, possible reevaluation by Dr. Barfield. [*Id.*] Upon review, Dr. Rawe concluded Plaintiff's MRI scan results "look[ed]

---

[6] "[B]ecause the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant," the general rule is that a claimant's treating physicians' opinions are afforded great weight. *Johnson*, 434 F.3d at 654 (quoting *Mastro*, 270 F.3d at 178). An ALJ, though, can give a treating physician's opinion less weight "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. Further, in undertaking review of the ALJ's treatment of a claimant's treating physicians' opinions, the reviewing court must remain mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

excellent" and recommended pain management instead of surgical intervention. [R. 347.]

In August 2008, Dr. Rawe noted Plaintiff continued to be bothered by bilateral low back and hip discomfort that had not fully responded to treatment by Dr. Barfield. [R. 348.] Dr. Rawe noted Plaintiff was "in constant discomfort which results in restriction activity" and that she would "frequently have to lie down for one or two hours during the day for pain relief." [*Id.*] Dr. Rawe further stated,

> It is my impression that this patient is unable to function because of low back and bilateral hip pain and neck discomfort. She may have a diagnosis of fibromyalgia, but this has been refractory to treatment with medication.

[*Id.*] Upon review of Plaintiff's MRI scan, Dr. Rawe opined, "[t]his looks excellent," noting there was no significant disc herniation, good fusion, and only "some very minimal" scar tissue. [R. 349–50.] Dr. Rawe further opined it was unlikely the scar tissue was causing Plaintiff's hip discomfort. [R. 350.]

On September 25, 2008, Dr. Rawe completed a Residual Functional Capacities form, assessing Plaintiff's functional limitations at well below the full range of sedentary exertional work with significant non-exertional limitations. [R. 150–53.] Specifically, Dr. Rawe opined Plaintiff's "prolonged and constant pain" rendered her capable of only "minimal physical activity" and also affected her concentration. [R. 152.] Dr. Rawe also noted Plaintiff's diagnosis of lumbar facet arthropathy. [*Id.*] In October 2008, Dr. Rawe opined Plaintiff's back impairment met the listing criteria for Listing 1.04, Disorders of the Spine, with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if

there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." [R. 154.]

### Weight Assigned to Dr. Rawe's Opinion by the ALJ

The ALJ, in considering Dr. Rawe's opinions regarding Plaintiff's residual functional capacity and her meeting Listing 1.04(a), accorded Dr. Rawe's opinion little weight, finding his limitations were not supported by clinical findings. [R. 13.] The ALJ noted, "MRI examinations and x-rays of the lumbar spine have failed to indicate any significant abnormalities or disc herniations and in Dr. Rawe's words, 'look[ed] excellent.'" [*Id.* (alteration in ALJ decision).] The ALJ further noted Dr. Rawe's clinical findings and the substantial medical evidence of record indicated Plaintiff's condition had improved. [R. 13–14.] On the other hand, the ALJ gave significant weight to the opinion of Dr. Frank Ferrell, a state agency medical consultant who provided residual functional capacity assessments based on a review of Plaintiff's medical record and opined Plaintiff could perform a limited range of light work and occasionally climb ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; and frequently climb ramps and stairs and balance. [R. 14.] The ALJ further assigned significant weight to the opinion of Dr. Richard Smith, another state agency medical consultant. [*Id.*]

### Analysis

Here, the ALJ failed to provide any discussion of how he weighed the *Johnson* factors when assigning Dr. Rawe's opinion little weight and assigning significant weight to the state agency medical consultants. The law is clear that a determination coming down on the side of a non-examining physician's opinion can stand only if the medical testimony

of examining and treating physicians goes both ways. *Smith*, 795 F.2d at 346. While the ALJ concluded the limitations found by Dr. Rawe were not supported by clinical findings because Dr. Rawe stated the MRI examinations and x-rays failed to indicated significant abnormalities or disc herniations and Dr. Rawe thought future surgical intervention was unlikely [R. 13], the ALJ failed to address the clinical findings that do support Dr. Rawe's opinion, e.g., restricted range of motion and "diffuse tenderness of both bursa over the greater trochanter bilaterally" [R. 348] and disc bulging [R. 204–05]. Further, although the ALJ noted Dr. Rawe stated MRI examinations and x-rays of the lumbar spine "'look[ed] excellent,'" the ALJ failed to square this isolated statement with other findings made by Dr. Rawe that support his findings or with those findings of other treating physicians, such as Drs. Netherton, Folk, Plyler, Barfield, Barlett, Popp, or Mitchell, that may support the limitations ascribed by Dr. Rawe.[7]

While the ALJ may discount the opinion of a treating physician, he cannot do so without properly explaining his reason for assigning weight between the physicians. Further, with respect to the non-treating state agency consultants, the ALJ indicates certain aspects of Dr. Ferrell and Dr. Smith's assessments are accorded significant weight without any explanation as to why such weight is appropriate in light of the record evidence. [R. 14.] Accordingly, the ALJ's assignment of weight is inconsistent with the requirements

---

[7]The Commissioner attempts to square the ALJ's reasoning by discussing and analyzing the findings of Drs. Barlett, Netherton, and Folk. The ALJ, however, failed to provide any such discussion in his decision. "Principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision and confine our review to the reasons supplied by the ALJ. That is why the ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to her conclusion.'" *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citations omitted).

articulated in *Smith*, 795 F.2d at 346, and the Social Security regulations, and the Court recommends the case be remanded.

**Allegations of Pain**

Plaintiff contends the ALJ failed to consider all of the objective evidence supporting her statements about the severity and limiting effects of her pain, and, thus, the ALJ's credibility findings are inadequate and must be reversed. [Doc. 13 at 15.] The Court agrees.

While the ALJ is required to make credibility determinations about allegations of pain or other nonexertional disabilities, "such decisions must refer specifically to the evidence informing the ALJ's conclusions." *Hammond,* 765 F.2d at 426. "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." SSR 96-7p, 61 Fed. Reg. at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2). If he rejects a claimant's testimony about her pain or physical condition, the ALJ must explain the basis for such rejection to ensure the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir.1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

the individual's statements and the reasons for that weight." SSR 96-7p61 Fed. Reg. at 34, 486.

In his decision, the ALJ notes Plaintiff testified her main problem was her back and that she has never been pain free since her surgery in 2002. [R. 12.] Plaintiff also testified she attempted to continue working after her surgeries but was unable to due to increased pain due to side-effects of her pain medication. [*Id.*] Plaintiff further testified it was painful for her to sit,[8] and she could walk only for short periods of time. [*Id.*] Based on Plaintiff's testimony, the ALJ stated,

> I have accorded the claimant the benefit of the doubt in limiting her postural activities and in deference to her pain, have limited her to simple, routine, repetitive tasks. Due to inconsistences in the record as a whole, I cannot find the claimant's allegations that she is incapable of work activity altogether fully credible.

[R. 14.] Missing from the ALJ's decision, however, is any discussion identifying the "inconsistencies in the records as a whole." Further, in discounting Plaintiff's claims of pain, the ALJ referenced only one side of the record, i.e., evidence that would support the ALJ's decision to find Plaintiff not credible. [*See* R. 12–14.] As a result, the ALJ failed to provide reasoning that addresses evidence in the entire record, including evidence that would support Plaintiff's credibility. *See* SSR 96-7p. Accordingly, because the Court is unable to determine if and how the ALJ weighed any supporting evidence, the Court cannot find substantial evidence supports the ALJ's conclusion that Plaintiff's allegations are not credible. On remand, the ALJ should revisit his credibility determination.

---

[8]The Court notes the transcript indicates Plaintiff had to sit "in kind of an odd position" as a result of her pain problems. [R. 25–26.] The ALJ either ignored or did not address this observation when discrediting this limitation.

**Failure to Employ Expert Vocational Testimony**

Plaintiff claims the ALJ erred by finding Plaintiff's pain was a severe impairment to the extent that it would limit her to unskilled jobs [R.13] but failing to properly consider whether her non-exertional impairments significantly limited her ability to perform work at any exertional level. [Doc. 13 at 15.] The Court agrees.

The grids consider only the exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his or her disability. *Walker*, 889 F.2d at 49. "Exertional limitations" exist "[w]hen the limitations and restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [her] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b). A nonexertional limitation "is a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not, such as mental retardation, mental illness, blindness, deafness or alcoholism" and is "present at all times in a claimant's life, whether during exertion or rest." *Gory*, 712 F.2d at 930 (footnotes omitted). A nonexertional limitation does not directly affect the claimant's exertional abilities—the ability to sit, stand, walk, lift, carry, push, or pull; rather, nonexertional limitations affect the mind, vision, hearing, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use the fingers for fine activities. *See* 20 C.F.R. § 404.1569a(c). "Thus, it is the nature of the claimant's limitations, not certain impairments or symptoms, that determines whether the claimant will be found to have only exertional limitations or restrictions, only

nonexertional limitations or restrictions, or a combination of exertional and nonexertional limitations or restrictions." SSR 96-9p, 61 Fed. Reg. 34,478-01, at 34,481 (July 2, 1996).

Thus, when a claimant suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, the ALJ may not rely exclusively on the grids to establish that the claimant could perform other work that exists in the national economy. *See Walker*, 889 F.2d at 49; *Coffman*, 829 F.2d at 518 ("When nonexertional limitations . . . occur in conjunction with exertional limitations, the guidelines are not to be treated as conclusive." (citing *Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir.1981); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a), (d)–(e)(2); 20 C.F.R. § 404.1569)); *Hammond*, 765 F.2d at 425–26 ("[T]he grids inadequately describe[] the claimant who suffers a disability present in the absence of physical exertion."); 20 C.F.R. § 404.1569a(d). Rather, in those circumstances, the Commissioner has the burden to prove by expert vocational testimony—not exclusive reliance on the grids—that, despite the claimant's combination of exertional and nonexertional impairments, specific jobs exist in the national economy that the claimant can perform. *Grant*, 699 F.2d at 192.

In finding Plaintiff capable of performing the full range of light work, the ALJ considered Plaintiff's Residual Functional Capacity ("RFC"), age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. [R. 14–15.] The ALJ concluded,

> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by the Medical-Vocational Rule 202.21. However, the additional limitations have little or no effect on the occupational base of unskilled work. The claimant's ability to perform postural limitations occasionally would leave the

> light occupational base virtually intact. (SSR 85-15) A finding
> of "not disabled" is therefore appropriate under this rule.

[*Id.*] However, the ALJ failed to discuss the fact that Plaintiff suffered from both exertional and non-exertional limitations that could potentially affect her ability to perform a full range of light work, thus, foreclosing the use of the grids in this instance. The record in this case is replete with evidence of non-exertional pain suffered by Plaintiff, which the ALJ acknowledged by limiting Plaintiff to simple, routine, and repetitive tasks. [R. 14.] Further, there is evidence Plaintiff suffered mild deficits in social functioning, concentration, persistence or pace [R. 318, 375], none of which were addressed by the ALJ in his decision.

While there are situations where an ALJ may use the grids to meet his burden at Step 5, *see, e.g., Hays v. Sullivan*, 907 F.2d 1453, 1458 (4th Cir. 1990), as discussed above, the grids do not apply to a claimant who suffers from severe non-exertional impairments or who cannot perform the full range of work activity within a grid category, *Walker*, 889 F.2d at 49; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h). Where a claimant suffers a non-exertional impairment that restricts her from performing the full range of activity covered by a work category, the ALJ may not rely on the grids and must produce specific vocational evidence showing the national economy offers employment opportunities to the claimant. *See Walker*, 889 F.2d at 49; *Hammond*, 765 F.2d at 425–26. While the courts have recognized that not every nonexertional limitation or malady rises to the level of a nonexertional impairment so as to preclude reliance on the grids, the proper inquiry is "whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Smith v.*

*Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984). There is no such discussion in the ALJ's decision regarding the effect of Plaintiff's non-exertional limitations on her ability to perform work within a particular grid category. Further, the Court notes the ALJ did not properly assess Plaintiff's credibility which, affects this Step 5 analysis. Accordingly, the Court is unable determine the ALJ's findings at Step 5 are supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 15, 2012
Greenville, South Carolina