IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Teresa J. Leap,  )
                        Plaintiff,  ) C/A No. 8:10-2995-MBS
                                     )
vs.  )
                                     ) **OPINION AND ORDER**
Michael J. Astrue, Commissioner of  )
Social Security Administration,  )
                        Defendant.  )

This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner").

I. PROCEDURAL HISTORY

Plaintiff Teresa J. Leap alleges that she has been disabled since April 1, 2008, because of problems with her back. Plaintiff filed an application for a period of disability and disability insurance benefits on April 29, 2008. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on February 11, 2010. On March 24, 2010, the ALJ issued a decision that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. On October 26, 2010, the ALJ's decision became the "final decision" of the Commissioner after the Appeals Council determined that there was no basis for granting Plaintiff's request for review. Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the "final decision" of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Jacquelyn D. Austin for a Report and Recommendation. On

February 15, 2012, the Magistrate Judge filed a Report and Recommendation in which she recommended that the Commissioner's decision to deny benefits be reversed and the case remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action. The Commissioner filed objections to the Report and Recommendation on March 5, 2012, to which Plaintiff filed a reply on March 22, 2012.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *Id.* This court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

## II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow,

however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III. DISCUSSION

A. Factual Background

Plaintiff was forty-six years old at the time of her claimed disability. She has past relevant work as an administrative assistant, realtor, legal assistant, sales associate, and accounting controller. *See* Tr. 14. Plaintiff's medical records show that she has been treated for back pain since at least September 29, 1998 when she presented to Charleston Neck & Back Center after falling off a boat onto a dock. *See* Tr. 301-03. Plaintiff had a lumbar laminectomy in 2003, followed by fusion and instrumentation six weeks later, and removal of the hardware in 2004. *See* Tr. 329. Her relevant medical history is as follows.

Plaintiff was referred by Dr. Kanich to Bon Secours St. Francis Hospital on August 11, 2006, for x-rays of her lumbar spine. The reading radiologist, Jeffrey K. Short, M.D., noted that the x-ray indicated surgical changes at the L5-S1 level including what appeared to be a fusion and application

of lateral bony material. There was no indication of fracture or subluxation. The sacroiliac joints were intact and unremarkable. No acute bony abnormality was apparent. Tr. 244.

Plaintiff presented to Stephen Rawe, M.D. on August 30, 2006 complaining of a "multitude of problems," including back pain which was doing well until she returned to working in a law office as opposed to selling real estate. She was taking Darvocet and had been doing pilates. She had a good range of motion of the cervical spine. She had no obvious weaknesses, reflex, or sensory abnormalities in the upper extremities and no findings to indicate myelopathy or radiculopathy. She exhibited good knee and leg reflexes and straight leg raising was negative. Tr. 203.

Plaintiff presented to Bon Secours St. Francis Hospital on August 30, 2006 for x-rays of her spine to determine cervical spondylosis. The x-rays presented no evidence of fracture or malalignment. The disc spaces appeared well preserved and there appeared to be normal motion on the flexion and extension radiographs. The paraspinous soft tissues were unremarkable. The reading radiologist, Timothy J. Berrigan, M.D. noted a negative impression for cervical spondylosis. Tr. 230.

An MRI of the cervical spine was performed by Radiology Associates on September 1, 2006. The vertebral body alignment was within normal limits. There were no focal areas of bone marrow signal abnormality. There was no evidence of abnormal spinal cord signal. Evaluation of the portion of posterior fossa visualized appeared unremarkable. Mild left uncovertebral spurring was noted at C3-C4 with no significant stenosis. Minimal disc bulging, no significant stenosis was noted at C4-C5. Left-sided degenerative facet joint arthopathy, mild diffuse disc osteophytic bulge, minimal flattening of the ventral cord without significant central canal stenosis, and mild left neural foraminal narrowing was noted at C5-C6. No disc bulge or protrusion or stenosis was noted at C6-C7. C7-T1

4

appeared to be normal. Tr 204.

Plaintiff was seen at the Charleston Neck & Back Center on December 4, 2006. Regarding her back, she reported three lumbar surgeries by Dr. Rawe that she described as a fusion and subsequent insertion and removal of screws and rods. Dr. Joseph W. Bartlett noted cervical, thoracic, lumbar, and sacroiliac segmental dysfunction and pelvic joint dysfunction to be treated with manipulation three times per week for one month. He also prescribed massage therapy three times per week for six weeks and supervised electric stimulation for fifteen minutes for a minimum of three times per week for six weeks. Tr. 255-60.

Plaintiff was treated at the Charleston Neck & Back Center on December 6, 2006; December 11, 2006; December 13, 2006, May 3, 2007. Tr. 261-270.

Plaintiff was examined by Mark D. Netherton, M.D. of Palmetto Interventional Pain Management on December 12, 2007. He indicated that she had a diagnosis of lumbar radiculitus. He gave Plaintiff an L5-S1 lumbar steroid epidural injection. Tr. 210.

Plaintiff presented to Dr. Rawe on April 3, 2008. It had been one and one-half years since her last evaluation. Plaintiff reported that when her back bothers her, it causes a flare-up of other symptoms, including headaches. Dr. Rawe reported that Plaintiff was evaluated by Dr. Netherton a few weeks previously and had local trigger point injections, which resulted in exacerbation of her low back and bilateral thigh discomfort. Plaintiff exhibited significant tenderness of the hips and low back, but had relatively good range of motion. Straight leg raising psoas stretch tests were negative. Knee and ankle reflexes were present. Plaintiff had no sensory abnormalities and no findings to indicate a myelopathy. Dr. Rawe expressed concern that Plaintiff might have a fibromyalgia-like syndrome. Dr. Rawe recommended that Plaintiff take Darvocet. He did not see

any indication that Plaintiff had structural abnormalities. Tr. 206.

Plaintiff was evaluated at the Southeastern Spine Institute on April 9, 2008. Plaintiff complained of a burning, aching pain in her low back along with stabbing pain down both legs since September 2007. Richard C. Holgate, MD reviewed an MRI of Plaintiff's lumber spine and noted that the lumbar spine showed normal bony alignment and normal marrow signal with no evidence of a congenital anomaly of the spine. Images of the hips, sacroiliac joints, piriformis muscles, and proximal sciatic nerves revealed no abnormality. Views of the distal thoracic spine showed a normal spinal cord and conus medullaris, normal vertebra and no evidence of abnormal discs. L1-2, L2-3, L3-4 showed normal disc space height and signal without disc bulge or herniation of disc material beyond its normal confines. There was no evidence of entrapment of the nerve roots in the exit foramen, lateral recess, or in the central canal. At L4-5 there was mild diffuse signal loss. There was no facet arthopathy and minimal bulge of disc, but no evidence of a compressive change could be seen. At L5-S1, there was noted a previous surgical intervention that appeared to have been an interbody fusion and a left-side laminectomy. There was no evidence of residual or recurrent herniation or nerve root compression. Tr. 213-14.

On April 15, 2008, Dr. Rawe noted that an MRI scan of the lumbar spine indicated no obvious instability and the fusion site at L5-S1 was solidly in place. Tr. 207. On April 17, 2008, Dr. Rawe noted that Plaintiff's MRI scan results were reviewed and looked excellent. Dr. Rawe observed that Dr. Netherton was considering doing facet injections, among other things. Dr. Rawe opined that he believed the pain management was appropriate and that she had no further disc issues that would require operative intervention. Tr. 347.

Plaintiff presented to the Charleston Neck & Back Center on April 21, 2008, complaining

of pain, numbness, stiffness, and weakness in her spine, ribs, and pelvic region. She described the pain as sharp and radiating. Dr. Barlett noted moderate lumbar strain. Left straight leg raising test revealed radicular pain beginning or exacerbating at 35 to 70 degree of hip flexion, indicating possible sciatic nerve root irritation by intervertebral disc pathology or an intradural lesion. A Kemp's Test on the left showed localized low back pain indicating lumbar pericapsulitis. Dr. Barlett diagnosed lumbar segmental dysfunction, sacroiliac segmental dysfunction and pelvic joint dysfunction to be treated with manipulation, and lumbar capsulitis, late effect strain, spasm, and lumbosacral strain to be treated with electric stipulation three times per week for one month. Tr. 271-73. Plaintiff was treated on April 22, 2008; April 24, 2008; April 25, 2008; April 28, 2008; April 30, 2008; May 5, 2008. Tr. 271-85. Dr. Bartlett reported improvement in Plaintiff's spasms and late effect strain on June 4, 2008. Tr. 335-36.

Richard Smith, M.D. prepared a Physical Residual Functional Capacity Assessment on July 10, 2008. He determined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour work day. She had no restrictions for pushing and/or pulling. He found she could frequently climb ramp/stairs, balance, kneel, and crawl; and occasionally climb ladders/ropes/scaffolds, stoop, and crouch. He determined that the evidence was consistent with functional limitations of light work secondary to disorders of the back. Tr. 322-29.

On July 15, 2008, Plaintiff was treated at Charleston Neck & Back Center and reported that her low back was somewhat better. Plaintiff was treated on July 18, 2008; July 21, 2008; July 31, 2008. On July 31, 2008, Dr. Barlett noted improvement in Plaintiff's subjective and/or objective status. Tr. 337-44.

Dr. Rawe completed a Residual Functional Capacities evaluation on September 25, 2008. Dr. Rawe determined that during an eight hour day Plaintiff could sit a total of thirty-five minutes at any one time, stand a total of forty-five minutes at any one time, and walk a total of twenty minutes at any one time. He noted that Plaintiff could occasionally lift/carry/push/pull less than ten pounds and never lift/carry/push/pull ten to twenty pounds or twenty to fifty pounds. Tr. 150. According to Dr. Rawe, Plaintiff should be able to use her extremities for repetitive actions over an eight-hour day, such as simple grasping, handling, and hand manipulating with both hands/arms; but never be able to use her extremities for repetitive actions over an eight-hour day, such as pushing and pulling with her hands/arms and operating foot/leg controls with either of her legs/feet. Dr. Rawe determined that Plaintiff should be able, over an eight-hour day, to occasionally kneel, crawl, and use her hands above shoulder level, but never squat or stoop. He also determined that Plaintiff should never be exposed to unprotected heights or moving machinery at work, but could occasionally be exposed at work to noise and vibration; dust, fumes, and gases; and extreme heat. Tr. 151. Dr. Rawe opined that, because of prolonged and constant pain, Plaintiff was capable of only minimal physical activity. He opined that Plaintiff's condition causes pain that would likely affect her ability to concentrate. He also stated that Plaintiff has lumbar facet arthopathy that is moderately painful and restricts her activity. Tr. 152. According to Dr. Rawe, no medication taken by Plaintiff has known side effects and/or requires additional limitations on her activity. Tr. 153. Dr. Rawe also opined that Plaintiff meets the criteria of Listing 1.04 (Disorders of the Spine).

Plaintiff was seen by Jeffrey W. Folk, M.D. of Pain Associates of Charleston on April 2, 2009. Dr. Folk noted mild paraspinous tenderness throughout, fair range of motion of lumbar spine. He noted slight left straight leg raise with extension of the lower left extremity. Dr. Folk assessed

left lower extremity pain, low back pain, radiculopathy. He prescribed left L4-L5 and L5-S1 transforaminal epidural injections and instructed Plaintiff to return in two weeks. Tr. 355-56.

Frank Ferrell, M.D. prepared a Physical Residual Functional Capacity Assessment on May 6, 2009. He determined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour work day. She had no restrictions for pushing and/or pulling. He found she could frequently climb ramp/stairs, and balance. He determined that she could occasionally balance, stoop, kneel, crouch, crawl, and climb ladders/ropes/scaffolds. He noted that Plaintiff's symptoms of chronic pain with low back pain and spasm were credible, but that partially credible was the degree of discomfort without supportive clinical/objective findings. Tr. 357-64.

B.   The Hearing Before the ALJ

At the hearing before the ALJ, Plaintiff testified that she has a high school education and one year of college. Plaintiff has degenerative disk disease and two fused disks. Tr. 24. She underwent surgery in 2002, and despite pain attempted to continue working. Tr. 25. Plaintiff testified that she takes pain medication every morning when she wakes up. She stays in bed most of the day. Tr. 25. It is painful to sit, and her legs go numb when she sits on the toilet. She has discomfort in her shoulder and neck. Tr. 26. She can walk for short periods of time, but the backs of her heels hurt. Tr. 26-27. Plaintiff testified that she has had nerve block injections and physical therapy. Tr. 27.

Plaintiff stated that she did no housework, but that she prepared light meals, such as sandwiches and ready-made items. *Id.* She has problems with her balance and has to catch herself to keep from falling. Plaintiff testified that her pain medication makes her drowsy and interferes with her ability to think. She stated that she tried hard to return to work after her surgery, but was

unable to perform. Tr. 28. According to Plaintiff, she got to the point that she could not take more and more pain medicine and try to start new jobs and then quit them. Tr. 29.

C.  The ALJ's Decision

The ALJ noted that Plaintiff had not engaged in substantial gainful activity since April 1, 2008, the alleged onset date. The ALJ found that Plaintiff has the following severe impairment: status/post surgeries of the lumbar spine. The ALJ further determined that Plaintiff's history of prior back surgeries did not meet the requirements of Listing 1.04 as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. He determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the condition that Plaintiff's pain limits her to simple, routine, repetitive tasks. The ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical and other evidence, including opinion evidence. He found that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible to the extent her statements were inconsistent with the residual functional capacity assessment. The ALJ found that Plaintiff's back pain has been well controlled since surgery. He also noted that although Plaintiff testified that she was unable to perform the duties of her work because of an increasing need for pain medication, her testimony was not consistent with the record, which showed a good result with no follow-up surgeries indicated. The ALJ observed that Plaintiff's treatment since the onset date had been conservative and clinical findings had been relatively benign.

The ALJ accorded little weight to Dr. Rawe's conclusions as set forth in his Residual Functional Capacities form because his limitations were not supported by any clinical findings,

including those of Dr. Rawe himself. The ALJ accorded significant weight to the opinions of the State Agency medical consultants, Dr. Ferrell and Dr. Smith. The ALJ determined that the clinical findings and other evidence of record fail to support Plaintiff's allegations of debilitating pain. He stated that he gave Plaintiff the benefit of the doubt in limiting her postural activities and in deference to her pain he limited her to simple, routine, repetitive tasks. Because of the inconsistencies in the record as a whole, the ALJ found that Plaintiff's allegations she is incapable of work activity altogether to be not credible.

The ALJ determined that Plaintiff is unable to perform any past relevant work. The ALJ further found that, if Plaintiff had the residual functional capacity to perform the full range of light work, considering her age, education, and work experience, a finding of "not disabled" would be directed by the Medical-Vocational Rule 202.21. He determined, however, that the additional limitations placed on Plaintiff have little or no effect on the occupational base of unskilled light work. According to the ALJ, Plaintiff's ability to perform postural limitations occasionally would leave the light occupational base virtually intact. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from April 1, 2008, through the date of the decision, March 4, 2010.

D. The Report and Recommendation

Plaintiff contended that the ALJ erred by (1) rejecting the opinion of Plaintiff's treating physician, Dr. Rawe; (2) failing to properly evaluate Plaintiff's allegations of pain; and (3) failing to obtain expert vocational testimony.

1. As to the treating physician opinion, the Magistrate Judge properly noted that an ALJ is obligated to evaluate and weigh medical opinions pursuant to the nonexclusive list of factors set

forth in *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005), i.e., (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. *See also* 20 C.F.R. § 404.1527. The Magistrate Judge concluded that the ALJ failed to provide any discussion of how he weighed the *Johnson* factors when assigning Dr. Rawe's opinion little weight and assigning significant weight to the State Agency medical consultants. According to the Magistrate Judge, the ALJ failed to address Dr. Rawe's clinical findings that do support Dr. Rawe's opinion, such as restricted range of motion and disc bulging; or findings of other treating physicians. The Magistrate Judge further determined that the ALJ's assignment of weight is inconsistent with *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (noting that the opinion of a treating physician may be disregarded only if there is persuasive contradictory evidence; that the testimony of a nonexamining physician can be relied upon when it is consistent with the record; and that, when the expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the nonexamining, nontreating physician should stand).

  2. Regarding Plaintiff's allegations of pain, the Magistrate Judge found the ALJ failed to adequately discuss the evidence in the entire record, including evidence that would support Plaintiff's credibility. The Magistrate Judge concluded that the ALJ's failure to more specifically state his reasons for his finding on credibility prevented the Magistrate Judge from finding substantial evidence supports the ALJ's decision as to this issue. *See Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (noting that the ALJ's credibility determinations should refer specifically to the evidence informing the ALJ's conclusion; and that

12

it is especially crucial in evaluating pain).

3.	With respect to the ALJ's failure to employ expert vocational testimony, the Magistrate Judge noted that an ALJ may not rely exclusively on the grids when a claimant suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable. *See Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (noting that when a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines) (citing *Wilson v. Heckler*, 743 F.2d 218 (4th Cir. 1984)). The Magistrate Judge noted that the ALJ was required to produce specific vocational evidence showing the national economy offers employment opportunities to Plaintiff. *See id.* at 50 (citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). Accordingly, the Magistrate Judge concluded that she was unable to determine whether the ALJ's findings are supported by substantial evidence. For these reasons, the Magistrate Judge recommended that the Commissioner's decision be reversed and remanded for further administrative action.

E.	The Commissioner's Objections to the Report and Recommendation

1.	The Commissioner first contends that the Magistrate Judge erred in finding that the ALJ did not properly explain his reasons for according little weight to Dr. Rawe's opinions. The court agrees.

In this case, the ALJ noted that Dr. Rawe's own clinical findings did not support his Residual Functional Capacities evaluation. As set forth in detail hereinabove, a review of the record demonstrates that on April 8, 2008, approximately five months before the Residual Functional Capacities evaluation, Dr. Rawe noted that Plaintiff exhibited significant tenderness of the hips and low back, but had relatively good range of motion; her straight leg raising psoas stretch tests were

13

negative; her knee and ankle reflexes were present; she had no sensory abnormalities and no findings to indicate a myelopathy or structural abnormalities. On April 15, 2008, he noted that an MRI scan of the lumbar spine indicated no obvious instability and the fusion site at L5-S1 was solidly in place. On April 17, 2008, Dr. Rawe noted that Plaintiff's MRI scan results were reviewed and looked excellent; that Dr. Netherton was considering doing facet injections; that the pain management was appropriate; and Plaintiff had no further disc issues that would require operative intervention. Thus, Dr. Rawe's Residual Functional Capacities evaluation was inconsistent with his own records.

Dr. Rawe's Residual Functional Capacities evaluation also is inconsistent with other evidence in the record. Richard C. Holgate, MD, in reviewing Plaintiff's MRI of her spine, found no abnormalities. He noted that at L4-5 there was mild diffuse signal loss; no facet arthopathy and minimal bulge of disc; and no evidence of a compressive change. At L5-S1, there was noted a previous surgical intervention, but there was no evidence of residual or recurrent herniation or nerve root compression. Plaintiff's pain was relieved by treatment by Dr. Bartlett and injections by Dr. Netherton and Dr. Folk. The ALJ's discussion addresses the supportability of the physician's opinion and the consistency of the opinion with the record, as required by *Johnson* and 20 C.F.R. § 404.1527.

The ALJ gave significant weight to the opinions of the State Agency medical consultants, Dr. Ferrell and Dr. Smith. The testimony of a nonexamining physician can be relied upon when it is consistent with the record. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1968) (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971). The court concludes that substantial evidence supports the ALJ's decision as to this issue.

2.   The Commissioner next argues that the Magistrate Judge erred in finding that the

ALJ's credibility evaluation was not supported by substantial evidence. The court agrees.

The determination of whether a person is disabled by pain or other symptoms is a two-step process. First, the claimant must produce objective medical evidence showing the existence of a medical impairments that could reasonably be expected to produce the pain alleged. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *Id.* at 595. The second step is analyzed using statements from treating and nontreating sources and from the claimant. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2011). The relevant factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant. *See* SSR 96–7p.

In this case, the ALJ found that Plaintiff satisfied the first prong of the test, such that her medically determinable impairment could reasonably be expected to cause the pain alleged. However, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of pain to be not fully credible based on evidence in the record prior to the alleged onset date of April 1, 2008 that Plaintiff had returned to work and had been doing pilates, and that medical examinations revealed no abnormalities or need for further surgical intervention. The ALJ took issue with Plaintiff's testimony that she was unable to perform the duties of her work because of an increasing need for pain medication, noting that the statement was not consistent with the record. The ALJ further noted that Plaintiff's treatment since her alleged onset date was conservative and clinical findings relatively benign.

The court notes no evidence in the record, other than Plaintiff's testimony, indicating that Plaintiff required additional medication, or that the medication made her drowsy so that she could

not work.[1] As set forth in detail hereinabove, the medical records further do not support Plaintiff's allegations of debilitating pain. The court concludes that substantial evidence supports the ALJ's decision as to this issue.

3. Finally, the Commissioner asserts that the Magistrate Judge erred in finding that the ALJ should have obtained vocational expert testimony to determine the potential impact of Plaintiff's nonexertional limitations on her ability to perform the full range of light work. The court disagrees.

Although the ALJ did not find Plaintiff to be completely credible, he gave her the "benefit of the doubt" and limited her postural activities. He observed that "in deference to her pain" he limited her to simple, routine, repetitive tasks. The ALJ thus determined that Plaintiff suffers from both exertional and nonexertional limitations. He then concluded that Plaintiff's ability to perform postural limitations occasionally would leave the light occupational base virtually intact.

Each grid considers only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of her disability. Thus, in cases where pain occurs only upon exertion and limits one's strength functioning, the grid tables will apply. When a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines. *Walker v. Bowen*, 889 F.2d 47, 49 (45h Cir. 1989) (citing *Wilson v. Heckler*, 743 F.2d 218 (4th Cir.1984)). Not every nonexertional limitation rises to the level of a nonexertional impairment so as to preclude reliance on the grids. *Id.* The proper inquiry is whether the nonexertional condition affects an individual's residual

---

[1] In fact, Dr. Rawe stated that no medication taken by Plaintiff has known side effects and/or requires additional limitations on her activity.

16

functional capacity to perform work of which she is exertionally capable. *Id.* (citing *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983)). The ALJ essentially made this finding by limiting Plaintiff to routine, repetitive tasks. Accordingly, the ALJ erred in not eliciting vocational expert testimony. The court concludes that substantial evidence does not support the ALJ as to this issue.

F.     Plaintiff's Reply Brief

Plaintiff informs the court that she filed a subsequent application for disability insurance benefits. Her application was approved by an ALJ on October 4, 2011, said benefits to have commenced as of February 1, 2011, six months prior to Plaintiff's fiftieth birthday. Plaintiff amends the relief sought in this case to request the court to adopt the Report and Recommendation, and that the court reverse and remand this case to determine whether she was disabled from April 1, 2008 to February 1, 2011. Because the court is remanding to allow the ALJ to obtain vocational expert testimony, the court further instructs the ALJ to consider Plaintiff's new evidence and make a determination as to whether Plaintiff was disabled from April 1, 2008 to February 1, 2011.

## IV. CONCLUSION

For the reasons stated herein, the court declines to adopt the Report and Recommendation as to the ALJ's determination to accord the opinion of Plaintiff's treating physician little weight. The court further declines to adopt the Report and Recommendation as to the ALJ's finding regarding Plaintiff's credibility evaluation. The court adopts the Report and Recommendation with respect to the ALJ's failure to obtain testimony of a vocational expert. The court further instructs the ALJ to consider the new evidence submitted by Plaintiff in making a decision regarding her entitlement to benefits under the Act. Accordingly, the decision of the Commissioner is reversed and the case remanded to the Commissioner pursuant to sentences four and six of 42 U.S.C. § 405(g)

for further administrative action consistent with the within Opinion and Order.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Court

March 29, 2012

Columbia, South Carolina